Peckham, J.
The parties to this controversy waive all technical objections to the hearing of the matter, and mutually desire a decision upon the merits of the ease, which will *424 involve a judicial construction of the meaning of some portions of the city charter, and of the act (chap. 252 of the Laws of 1885) entitled “ An act relating to improvements , in streets fronting real estate, the title to which is vested in the people of the state or any department of the state government.”
The facts of the case are substantially stated in the affidavit of Mr. Holler, the relator, and it is upon such statement that the court bases its decision herein, not regarding any statement. of a mere conclusion of law, however.
The counsel for the defendants interposes several objections to the granting of the writ, which will be noticed as follows:
First. The defendants claim a right to rescind the resolu tion amending the contract to the relator. The common council passed the law for the repaving of the street ir. question, and directed the defendants to carry the same out by advertising in the manner -provided for by the charter, which also provides that the contract shall'be let to the lowest bidder.
The common council is the body which originates the proceeding (after a proper petition has been presented to it), by passing a law or ordinance for the repaving of the street. This power is specially given to that body (Charter,* p. 47, sec. 25). The defendants, when such a law has been passed, are clothed with the power of carrying out the same, and by the statute are directed to issue proposals for the contract, which, as I have already said, they must let to the lowest bidder (charter,† pp. 87, 88, secs. 3, 4, 5); when a law for repaving has been passed and proposals issued, bids received, and, by resolution of the board, the contract let to the lowest bidder, he then has a right to go on and have the proper written contract made out in accordance with his bid SO accepted, and the board has no right to rescind the resolu *425 tion awarding the contract, provided the law has been fulfilled and its terms complied . with. If, therefore, the 'other objections raised by defendants are not tenable, the relator has a vested, right to the contract, and the defendants cannot deprive him of it by assuming to, rescind the resolution which awarded it to him, he being the lowest bidder.
Second. It is also objected that the certificate of the engineer is not sufficient, in that it speaks of the petitioners or their attorneys having signed to the requisite amount, and that the statute does not provide for a signature by attorney.
There is nothing in the objection. It is one of the most familiar maxims of the law, that what a man does by his agent he does himself. It is true that section 30 of the charter,* at page 49, speaks of the petition being signed by one or more persons, and leaves out the phrase “ or their duly authorized attorneys,” which phrase is to be found in the section immediately preceding. But the omission is wholly immaterial. The signature of the attorney (being authorized) is as valid as though 'made by the owner himself, and it would require affirmative words in the statute taking away the power to sign by attorney before said signing would be illegal. If the people signing as attorneys were not in fact authorized to sign, such want of power is not to be presumed, but must be proved by those who attack the petition as invalid. The general railroad act provides for the articles of association being signed by twenty-five or more persons. Yet it has been held that signatures of attorneys are valid (if duly authorized), and there is no presumption of a want of such authority, but, on the contrary, those who attack the signatures as illegal must show that they were unauthorized (In re N. Y., L. and W. R. R. Co., to acquire lands, 21 Week. Dig., 437, Ct. of App.). But in this special case it is stated, and I believe uncontradicted, that there is enough land represented on the petition without counting the signatures by attorney, provided the land owned by the state, and which is signed for by the *426 governor, should be counted, and as there is not enough in any event if the state land be excluded from the count, the point is of not much practical importance.
Third. It is claimed that the signature of the governor, for the land owned by the state, and fronting on the street, is not to be taken or counted, because the land owned by the state does not legally appear upon the tax-roll, and it is further contended that there must be a petition signed by the owners of a certain proportion of the land appearing upon such, and that if the land owned by the state be not counted, the petition has not enough signers upon it. The last statement of fact is conceded, while the validity of the rest of the claim is denied. It is a fact of which the courts will take notice that many charters of municipal corporations in this state provide for a petition to the common council, board of trustees, or other governing body for any improvements of streets, which petition must be signed by some proportion of owners of the property fronting the streets before any action looking to such improvement can be taken. The state owns lands in many of our cities and villages, and is continually acquiring more for arsenal and other purposes, and the want of power in some one to represent this ownership of the state would make and has naturally made itself felt, particularly since the state is assessed for improvements of such a nature like any other owner, unless specially exempted therefrom (Hassan agt. City of Rochester, 67 N. Y., 528).
Under such circumstances the legislature passed the act (chap. 252 of 1885) already referred to. It provides that the governor may sign any petition required by law to be made for the improvement of any street by, among other things, repaving, etc., whenever the land owned by the state fronts on such street. But it is said the land of the state does not appear on the tax roll, and it is only of land appearing on such roll that the owners of a certain proportion of the same can bind the rest of the expenses of the improvement. The answer is, if such were the law, it is now, in effect, amended, for it now *427 permits the governor to sign any petition required by law, and if the law in Albany has heretofore required a petition to be signed by a certain proportion of owners of land appearing on the tax rolls, the law now says that such a petition may be signed by the governor, provided the land owned by the state fronts on the street to be improved, and it may be signed by him, it of course means that the signature is to count for the number of feet owned by the state fronting on the street.
The object of the act is plain, and that is to permit the governor to sign any petition for the improvement of a street on account of the ownership by the state of any land fronting-on the street, in the same manner and with the like effect as if the land, were owned by a private individual, and to that extent the law is to be regarded as in effect an amendment to every charter in the state, where, without such act, the governor could not sign in behalf of the state. It might, with the same force, be claimed that the signature of the mayor, under section 31 of the charter * (page 49), for the land owned by the city cannot be counted, because the land does not appear on the tax rolls. In such case the legislature has made another and special provision, so that for land owned by the city the mayor can sign, although the land does not appear on the tax rolls, and for lands owned by the state the governor can sign, and such land must in both cases be counted. I have no-doubt the act of 1885 applies to the city of Albany to the same extent as if the statute contained the words, “ This act shall apply to the city of Albany.”
Fourth. But even if the statute did not apply, the certificate of the city engineer that there had been secured the requisite number of feet, is made by the charter conclusive evidence. This the legislature had undoubted power to do. There is no allegation of fraud on the' part of the officer making such certificate, and in the absence of all fraud, the certificate must govern, the legislature had power to provide *428 for a repaving by the direction of the common council, whenever in its judgment, it might be expedient,' without providing for the necessity of a petition, or setting up any condition other' than the unlimited discretion of the common council. Instead of permitting- the common council to exercise any such power, it provides in the charter in question that it shall be exercised only upon a petition, &c., of owners, and that a requisite number of owners have signed is to be proved by the certificate of the engineer, and such certificate is by the very terms of the statute conclusive evidence of the fact, in the absence of fraud at any rate. I hold the terms of the statute under such certificate conclusive, and that the law is a valid and constitutional exercise of legislative power.
This covers the points made by defendants. Hone of them are tenable, and the mandamus should issue; but as the defendants are public officers acting in good faith, no costs are awarded against them.

Chap. 298, Laws of 1883 ; 1 S. L., p. 359, sec. 25.

Chap. 298, Laws of 1883 ; 1 S. L., p. 383, sec. 5.

 Chap. 298, Laws of 1883; 1 S. L., p. 361, sec. 30.

 Chap. 298, Laws of 1883; 1 S. L., p. 361, sec. 32.